**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**OLGA CHOROLEC,**

Plaintiff,

v.

**BALLY TOTAL FITNESS, sued as Bally Total Fitness Corporation,**

Defendant.

Civil No. 00-1548 (JGL)

**O R D E R**

---

APPEARANCES

Gerald W. Bosch, Esq., for Plaintiff.

Richard L. Leighton, Esq., for Defendant.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on June 5, 2001 on Defendant's Motion for Summary Judgment (Doc. No. 12) and Plaintiff's Motion to Strike Affirmative Defense (no Doc. No.) The parties have voluntarily consented to have the undersigned Magistrate Judge exercise jurisdiction and conduct any and all proceedings in this case including the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b).

FILED 6-15-01
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD 6-15-01
DEPUTY CLERK

Defendant Bally Total Fitness ("Bally") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) on the grounds that there are no genuine issues of material fact and that Bally is entitled to judgment as a matter of law. Plaintiff Olga Chorolec opposes Bally's motion and moves to strike Bally's affirmative defense based on a contractual exculpatory clause, written waiver, and release.

## I. DEFENDANT BALLY'S MOTION FOR SUMMARY JUDGMENT

### A. Standard of review for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A disputed fact is "material" if it must ultimately be resolved and if its resolution will determine the outcome of the case. See id. Materiality is determined by examining the substantive law of the claims. See id.

The nonmoving party may not rest upon the pleadings alone as a response but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party may not rely on mere allegations or denials but must present supporting evidence. See id.;

Lambert v. City of Dumas, 187 F.3d 931, 934 (8th Cir. 1999) (citations omitted). Additionally, the movant is entitled to summary judgment when the non-movant fails to establish the existence of an essential element of a claim on which that party has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). No genuine issue of material fact exists absent such foundation because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In deciding a motion for summary judgment, a court must view the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. See Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997) (citations omitted). In this case, Plaintiff Chorolec is the nonmoving party. Upon review of the evidence submitted by the parties, the Court finds no genuine issues of material fact.

**B. Relevant Facts**

Plaintiff Chorolec is a seventy-two year old woman who immigrated to the United States from the Ukraine in 1950. On June 10, 1998, Ms. Chorolec slipped and fell after exiting a whirlpool at the Fridley, Minnesota location of Defendant Bally ("the Fridley club"). Plaintiff fell while descending a series of steps leading to the main pool area. The brick stairs were wet and were not protected by any mats or non-skid pads. When she fell, she injured

her head, neck, shoulder, arm, back, buttocks, and knee. As a result of the fall, Plaintiff brought this lawsuit, alleging Bally was negligent in failing to properly design, construct, inspect, and maintain the whirlpool area, and negligent in failing to warn Plaintiff of a hazardous and dangerous condition.

Ms. Chorolec originally joined Bally in 1989 after her physicians advised her to participate in an exercise program. She signed a membership contract, which provided for financed payments over an eighteen-month period. After the eighteen-month period, Plaintiff continued her membership at the Fridley club on a month-to-month basis until August 1993. On August 25, 1993, a Bally sales representative approached Ms. Chorolec at the club and asked her if she wanted to take advantage of a lower monthly payment by entering into a new membership contract with Bally. To enter into the new membership, Plaintiff would have to pay a down payment of $158.69.[1] The monthly fee would be reduced from $21.75 to $5.33. Without reading the contract or discussing its terms with the Bally representative, Plaintiff signed the contract and paid the full cash price of the membership with a check.

The contract is a two-sided document entitled "Retail Installment Sales Contract/Consumer Credit Contract." The front page of the contract contains a waiver and release provision stating, "This Contract contains a

---

[1] Plaintiff testified in her deposition that the down payment was $250.00, but the contract clearly states the amount was $158.69.

WAIVER AND RELEASE on the reverse side to which you will be bound." The back page of the contract includes an exculpatory clause, which reads:

> You agree that if you engage in any physical exercise or activity or use any club facility on the premises, you do so at your own risk. This includes, without limitation, your use of the locker room, pool, whirlpool, sauna, steamroom, parking area, sidewalk or any equipment in the club and your participation in any activity, class, program or instruction. . . . You agree that you are voluntarily using these facilities and premises and assume all risk of injury, damage or loss that might result. You agree on behalf of yourself . . . to release and discharge us . . . from any and all claims or causes of action (known or unknown) arising out of our negligence. This Waiver and Release of liability includes, without limitation, injuries which may occur as a result of (a) your use of any exercise equipment or facilities which may malfunction or break, (b) our improper maintenance of any exercise equipment or facilities, (c) our negligent instruction or supervision, and (d) you slipping and falling while on the premises. You acknowledge that you have carefully read this Waiver and Release and fully understand that it is a release of liability. You are waiving any right that you may have to bring a legal action to assert a claim against us for our negligence.

The 1993 contract also contains a "Right of Cancellation" clause, which allows a new member to cancel a membership contract in writing within three business days of signing the contract.

### C. **Whether the Exculpatory Clause Is Enforceable and Bars Plaintiff's Claims**

Bally contends the exculpatory clause is enforceable under Minnesota law and therefore bars Plaintiff's negligence claims brought in this

lawsuit. Plaintiff argues that the exculpatory clause is barred by Minnesota's Consumer Credit Sales Act, is ambiguous, violates public policy, is part of an adhesion contract, and is based on fraud and inducement. The parties agree that Minnesota state law controls the legality of the exculpatory clause.

### 1. **Whether the Minnesota Consumer Credit Sales Act Applies to the 1993 Contract**

The Consumer Credit Sales Act ("CCSA") pertains to credit transactions. The CCSA provides in relevant part that no contract relating to a consumer credit sale shall contain a provision by which a "consumer relieves the seller from any liability for any legal remedy which the consumer may have against the seller under the contract or obligation or any separate instrument executed in connection therewith." Minn. Stat. §§ 325G.15, subd. 2(a); 325G.16, subd. 2(f).

The Court finds the CCSA inapplicable to the contract at issue in this case. By its terms, the statute requires an extension of credit by the seller to the buyer in order for a consumer credit sale to exist. Plaintiff Chorolec's 1993 contract with Bally clearly did not involve a consumer credit sale. The Minnesota Supreme Court defines a credit sale as one in which "a buyer acquires possession but is allowed to defer full payment." Miller v. Colortyme, 518 N.W.2d 544, 548 (Minn. 1994) (citation omitted). Here, Plaintiff paid a lump sum cash amount of $158.69, which represented the full cash price of the membership. The contract explicitly reads that the amount financed is

zero. The provision for monthly dues does not convert the cash price transaction into a financed transaction. Plaintiff primarily bases her argument on the title of the contract form: "Retail Installment Sales Contract/ Consumer Credit Contract." However, Bally explains that the purpose of the preprinted language is to comply with various state and federal financial disclosure requirements in cases where a credit transaction is elected by the parties. Ms. Chorolec did not elect a credit transaction, and the Court finds that the preprinted term "consumer credit contract" did not change the cash sale into a credit transaction. The actual nature of the transaction, not a preprinted term, should predominate. In addition, inserted handwritten or typewritten terms prevail over preprinted ones. See Restatement (Second) of Contracts § 203 cmt. f (1981). The handwritten and typewritten terms added to the 1993 contract make clear the parties' intention to conduct a cash, not financed, transaction.

Even if the 1993 contract concerned a financed transaction, Plaintiff cites no precedent wherein the CCSA was applied to bar a negligence liability exculpatory clause. Rather, the CCSA applies to cases in which a consumer is obligated by a contract to waive a "legal remedy which the consumer may have against the seller under the contract or obligation." Minn. Stat. § 325G.16, subd. 2(f) (emphasis added). Plaintiff's interpretation of the statutory word "obligation" to include Plaintiff's waiver and release of

negligence liability is not supported by a reading of the statute or case history. Rather, by its terms, the CCSA relates to legal remedies created by the contract or credit obligation.

### 2. Whether the Exculpatory Clause Is Ambiguous, Violates Public Policy, or Is a Contract of Adhesion

The Minnesota Supreme Court has established several tests to determine whether exculpatory clauses are valid and enforceable. See Schlobaum v. Spa Petite, Inc., 326 N.W.2d 920, 923-26 (Minn. 1982). First, "if the clause is either ambiguous in scope or releases the benefitted party from liability for intentional, willful, or wanton acts, it will not be enforced." Id. at 923. In the present case, Plaintiff attempts to show ambiguity by isolating certain phases in the exculpatory clause such as "without limitation" and "any and all claims or causes of action." In so doing, however, Plaintiff asks the Court to consider these phrases out of context, which the Court declines to do. For example, with respect to the phrase "any and all claims or causes of action," the phrase in context reads, "any and all claims or causes of action (known or unknown) arising out of our negligence." The relevant sentence clearly purports to exculpate Bally from liability for negligence and only negligence. And, the phrase "without limitation" does not refer to unlimited causes of action but to the member's use of the facilities. The clause does not purport to limit liability for intentional, willful, or wanton acts. The final sentence provides the context for the entire clause: "You are waiving any right

that you may have to bring a legal action to assert a claim against us for our negligence." In conclusion, after reviewing the entire exculpatory clause, the Court finds the clause unambiguous in scope and aims to exonerate Bally from only negligence claims.

Second, an exculpatory clause may not be enforced if it is against public policy. See Schlobaum, 326 N.W.2d at 923. A clause violates public policy if there is a disparity in bargaining power between the parties and if the service being offered is a public or essential service. See id. (citations omitted). Here, there was no disparity between the parties because Bally's Fridley club is not the only provider of fitness facilities. Like Ms. Schlobaum, Plaintiff Chorolec voluntarily applied for membership at the Fridley club and agreed to the terms of the membership. See id. at 925. Furthermore, Ms. Chorolec has not shown that Bally's services were necessary or could not have been obtained elsewhere. See id. Although Plaintiff testified that her doctors encouraged her to participate regularly in an exercise program, Plaintiff provided no medical evidence to support her assertion. The Court does not accept Plaintiff's unsubstantiated contention that she could exercise only at a fitness facility, and specifically, only at the Fridley club. Additionally, providing fitness facilities is not a public or essential service. See id. at 926.

Plaintiff also argues that the exculpatory clause violates public policy because the Fridley club's pool and whirlpool areas are subject to

governmental regulations. However, a clause violates public policy only when there is disparate bargaining power and if the service is a public or essential one. Because the Court has found no disparate bargaining power, the first prong of the test has not been met, and Plaintiff's argument is unavailing.

Finally, an exculpatory clause contained in a contract of adhesion is unenforceable. See id. at 924. "[A]n adhesion contract is drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere." Id. In addition, to find a contract of adhesion, there must be a great disparity in bargaining power and no opportunity for negotiation. See id. As discussed above, Plaintiff Chorolec has not established a great disparity in bargaining power or that the scrviccs could not be obtained elsewhere. Merely because a contract consists of a preprinted form and is offered on a "take it or leave it" basis does not cause it to be an adhesion contract. See id. (ultimately finding that health club contracts are not adhesion contracts).

Part of Plaintiff's argument is that she had no "meaningful alternative" to Bally's contract because "most Twin Cities health clubs require members to sign a release and waiver agreement." However, Plaintiff provides only one other contract as evidence for her assertion. Moreover, if the contracts of most fitness facilities contain an exculpatory clause, a likely

explanation is because they are allowed by Schlobaum. Other facilities' exercise of a legal right should not factor against Bally.

### 3. **Whether the Exculpatory Clause Was Based on Fraud and Inducement**

Ms. Chorolec asserts that the exculpatory clause is invalid because Bally failed to notify her that the 1989 membership contract did not contain an exculpatory clause while the 1993 contract did. Plaintiff's argument is premised on her characterization of the 1993 contract as a "renewal" contract. She contends that Bally had an obligation to explicitly notify her because it unilaterally "modified" the 1989 contract and added the exculpatory clause.

Plaintiff's position is antithetic to the record evidence. First, the 1993 contract is clearly not a renewal or modification of the 1989 contract, but is a new and separate contract. There is no evidence that Plaintiff thought she was renewing or modifying a contract; rather, she testified that she signed a second contract, which she knew was a different contract from the first. Second, Plaintiff provides no evidence that the 1989 contract did not contain an exculpatory clause. On the other hand, Bally submitted a copy of the contract it regularly used in 1989, which does contain a waiver and release of liability clause.

## D. **Whether Plaintiff's Injuries Were the Result of Bally's Willful and Wanton Conduct, Which Would Cause the Exculpatory Clause To Be Inapplicable**

In Plaintiff's reply to Defendant's motion for summary judgment, she claims for the first time that Bally knew of the allegedly hazardous condition of its pool and whirlpool area in 1997 when another member of the Fridley club slipped and fell on the steps leading from the whirlpool. Plaintiff contends Bally's purported knowledge constitutes wanton and willful conduct, thereby making inapplicable the contractual clause exculpating negligence. Ms. Chorolec admits that she did not include a claim for wanton and willful conduct in her complaint, but she relates an intention to amend her complaint to add such a claim at some unspecified time in the future.

The Court declines to consider this argument raised for the first time in response to Bally's motion for summary judgment. The time frame for motions to amend the pleadings expired on October 1, 2000. Plaintiff has not brought a motion to amend the pretrial schedule, much less shown good cause to do so. Nor has Plaintiff moved to amend her complaint, despite having received the evidence supporting the new claim on or about April 12, 2001. In reviewing a motion for summary judgment, a court is limited to the claims and record before it, and the claims in this case do not include one for wanton, willful, or intentional conduct by Bally.

### E. Conclusion

For the reasons set forth above, Bally's motion for summary judgment is granted.

## II. PLAINTIFF CHOROLEC'S MOTION TO STRIKE BALLY'S AFFIRMATIVE DEFENSE

Plaintiff moves to strike an affirmative defense pled in Bally's answer. For the following reasons, Plaintiff's motion is denied. First, the motion to strike is untimely. Federal Rule of Civil Procedure 12(f) requires that motions to strike must be made "before responding to a pleading or, if no responsive pleading is permitted by these rules, . . . within twenty days after the service of the pleading . . . ." No response to an answer is permitted except by court order. See Fed. R. Civ. P. 7(a). Thus, Plaintiff was not permitted to, nor did she, file a responsive pleading to Defendant's answer. Plaintiff's motion to strike Bally's affirmative defense was therefore due twenty days after service

of Bally's answer, which occurred in July 2000. Furthermore, as discussed in Part I above, the Court has found the exculpatory clause valid and enforceable.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Defendant's Motion for Summary Judgment (Doc. No. 12) is **GRANTED**;

(2) Plaintiff's Motion to Strike Affirmative Defense (no Doc. No.) is **DENIED**; and

(3) Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 15, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd